JOSEPH & HERZFELD LLP
D. Maimon Kirschenbaum (DK-2338)
Charles E. Joseph (CJ-9442)
757 Third Avenue, 25th Floor
New York, New York 10017
Telephone:  (212) 688-5640
Facsimile:  (212) 688-2548

*Attorneys for Plaintiffs*
*ALISA AGOFONOVA AND AARON POU,*
*on behalf of themselves  and all others similarly*
*situated*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALISA AGOFONOVA and AARON POU on behalf of themselves and all others similarly situated, | ) ) ) |
| | ) |
| Plaintiff , | ) ) |
| | ) |
| v. | ) ) |
| NOBU CORP., NOBU ASSOCIATES, L.P., NOBU NEXT DOOR, LLC, NOBU 57 LLC, DREW NIEPORENT, and RICHARD NOTAR, | ) ) ) ) |
| Defendants. | ) ) ) |
| | ) |

INDEX NO: 07 CIV 6926 (DAB)

## MOTION FOR PRELIMINARY APPROVAL OF STIPULATION OF SETTLEMENT AND DISMISSAL OF CLASS AND COLLECTIVE ACTION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and Section 216(b) of the Fair Labor Standards Act ("FLSA"), Plaintiffs Alisa Agofonova and Aaron Pou ("Class Representatives") apply to this Court for preliminary approval of a proposed settlement in this wage and hour class and collective action ("Wage Action").  Counsel to Nobu Corp., Nobu Associates, L.P., Nobu Next Door, LLC, Nobu 57 LLC, Drew Nieporent and Richard Notar ("Defendants' Counsel") have agreed to the terms of the settlement and do not object to relief requested herein.

## I.     **<u>INTRODUCTION</u>**

Class Representatives submit this motion requesting preliminary approval of a proposed settlement in this Wage Action brought on behalf of certain employees of Nobu Corp., Nobu Associates, L.P., Nobu Next Door, LLC, Nobu 57 LLC, Drew Nieporent and Richard Notar (collectively "Defendants"). The settlement will resolve all claims before this Court. The proposed compromise is set forth in a Joint Stipulation of Settlement and Release, dated August 5, 2008 ("Agreement"), attached as Exhibit A.

The Class Representatives ask this Court to enter the proposed Order, ("Order"): (1) finding that the proposed settlement class meets the requirements for class certification under Rule 23; (2) approving the Class Notice and Consent to Join Forms that will be sent to the proposed settlement class; (3) setting a deadline within 20 days after the Order is preliminarily approved that the Class Notice, and Consent to Join Forms be sent to the proposed Settlement Class members by mail to the employees' addresses as they are maintained by the Defendants; (4) setting a deadline within 60 days of mailing of Class Notice and Consent to Join Forms for opting out of, or excluding oneself from, the state claim class action pursuant to Rule 23; (5) setting a deadline of 60 days after mailing of Class Notice and Consent to Join Forms for objecting to the settlement; (6) setting a deadline within 60 days of mailing of Class Notice and Consent to Join forms for opting in to the FLSA collective action pursuant to Rule 216(b); (7) appointing the Class Representative as class representative for the purposes of prosecuting the state law claims on behalf of the proposed state subclass; (8) appointing Class Counsel as counsel for the proposed class; and, (9) scheduling a hearing at the Court's convenience at which the Court will consider the Parties' motion for (i) final approval of the settlement, (ii) entry of their proposed final judgment, and (iii) approval of Class Counsel's application for an award of

attorneys' fees and reimbursement of costs.

## II.    BACKGROUND

### A.    The Litigation

The Class Representatives filed the Wage Action on August 2, 2007, alleging wage and hour violations under the FLSA and New York's Labor Laws.  A copy of the Complaint is attached hereto as Exhibit B.    The case was assigned for all purposes to Judge Deborah A. Batts.    The Class Representatives' proposed class consisted of: "all non exempt persons employed by Defendants as a server and/or busboy on or after the date that is six years before the filing of the Complaint in this case."  The Wage Action seeks, *inter alia*, recovery of unpaid wages, disgorgement of tip income, disgorgement of the tip credit applied by Defendants towards Plaintiffs' wages, back pay for all unpaid overtime, liquidated damages, penalties, interest, attorneys' fees, costs, and equitable relief.  The Complaint sets forth claims for, *inter alia*:

> a.    Allowing non-customarily tipped employees such as managers and back-of-the house employees to receive tips;
>
> b.    Maintaining an involuntary tip-pool policy;
>
> c.    Failure to pay minimum wage for all hours worked; and
>
> d.    Failure to pay overtime for all hours worked in excess of forty hours per workweek;

After Defendants appeared in the Wage Action, the Parties met and conferred over both the legal issues and the factual bases underlying the Class Representative's claims.    Defendants provided Class Counsel with extensive volumes of workplace and statistical analysis

information in an extended confidential settlement process.  Class Counsel analyzed the factual and statistical information and continued to discuss the legal and factual issues in this case with Defendants' Counsel.

The Parties agreed to hold a voluntary mediation ("Mediation") before Ms. Bonnie Siber Weinstock (the "Mediator"), an experienced wage and hour mediator, in an attempt to resolve the issues pending before the Court in this Wage Action.  The Mediation was held on May 13, 2008, at the offices of Defendants' Counsel and present at the Mediation were the Class Representatives, several Settlement Class members, Defendants, Defendants' Counsel and Class Counsel.

Prior to the Mediation, and throughout the course of the Wage Action, Class Counsel and Defendants' Counsel vigorously investigated the claims against Defendants.  As part of the investigation, Defendants produced personnel files of randomly chosen putative Settlement Class members, wage and payroll records, including but not limited to, daily time sheets, ADP reports, daily and weekly payroll worksheets, tip-sheets, and electronic time cards.  Defendants also produced documents describing each position at their restaurant including, for example, classified advertisements placed in newspapers and on the internet.  In addition, Defendants' Counsel interviewed corporate representatives who had knowledge of the facts and provided information to Class Counsel.  The Parties agreed that these abundant documents were relevant to the claims asserted by the Class Representatives and that the production of these documents facilitated meaningful and productive settlement discussions, including the Mediation.  Class Counsel has reviewed and analyzed all of the wage records provided and other information produced by Defendants relating to the putative class.

In addition, prior to the Mediation, the Parties each submitted a confidential Position Statement to the Mediator. The Settlement Class members' Position Statement contained the Settlement Class members' legal and factual arguments supporting their position that Defendants violated the FLSA and New York's Labor Laws. The Settlement Class members' Position Statement also included spreadsheets containing their calculations of damages in this Wage Action. Similarly, the Defendants' Position Statement contained their legal and factual arguments in support of their defense to the claims asserted by the putative Settlement Class members in this Wage Action. The factual bases of the Parties' Position Statements were based upon, in-part, the documents produced by Defendants prior to the Mediation.

Through the efforts of the Mediator, the Parties reached a preliminary agreement to settle the Wage Action.

**B.     The Parties Have Fully Explored the Strengths and Weakness of Their Respective Positions**

During the pendency of the Wage Action, Class Counsel and Defendants' Counsel vigorously investigated the Class Representative's claims against Defendants. As part of the investigation, Class Counsel reviewed Defendants' wage records for each of Defendants' three restaurants throughout the claim period. As indicated above, the wage records included, but were not limited to, hourly rate information, employment position, daily time sheets, sign-in and sign-out forms, electronic timekeeping stubs, attendance records, W-2 forms, dates of hire and discharge, personnel files, wage stubs, and other wage records. Class Counsel analyzed all of the wage records provided and other information produced by Defendants relating to the putative class.

At all times throughout the Wage Action, Defendants continued to deny any liability or wrongdoing of any kind associated with the claims alleged in the Wage Action. Defendants

further contend, among other things, that they complied with the FLSA and all state wage and hour laws. The Class Representatives believe they have filed a meritorious action based on alleged violations of the FLSA, state wage and hour laws

After countless hours of negotiation, the Parties' counsel entered into the attached Agreement settling the Wage Action, provided of course, that the Court grants approval of the Agreement. The settlement amount is, of course, a compromise figure. It took into account what the parties contended were risks regarding proof of wages owed, and other defenses asserted by Defendants. The settlement amount accounts for the possibility a settlement reached months or even years later might be reduced due to Defendants' litigation costs. Furthermore, the Class Representatives and Class Counsel also considered the time, delay, and financial repercussions in the event of liability trials, numerous damages trials, and appeal by Defendants. Of particular relevance to the reasonableness of the proposed settlement is the fact that Defendants will vigorously contest Plaintiffs' claims if the Litigation does not settle. Although the Class Representatives and Class Counsel believe that their claims have merit, they recognize that they would face legal, factual and procedural obstacles to recovering. In light of the strength and weaknesses of the case, the Class Representatives and Class Counsel believe that the settlement easily falls within the range of reasonableness because it achieves a significant benefit for the Settlement Collective Action Members where failure before or at trial is possible.

## III.    THE PROPOSED SETTLEMENT

### A.    Settlement Class

The proposed settlement has been reached on behalf of the [proposed] "Class," defined in the Agreement as the,

Class Representatives, and all non-exempt employees employed by Defendants as a server, runner, busser, bartender, or any similar position during the relevant Claims Periods set forth below:

  a.    Under applicable state laws, excluding those current or former employees who opt-out of or exclude themselves from this Agreement -  from August 2, 2001 through _____, 2008, the date of filing this Agreement with the Southern District of New York. ("State Claim Period").

  b.    Under the FLSA, excluding those current or former employees who do not opt-in to the FLSA class - from July 2, 2005 through _____, 2008, the date of filing this Agreement with the Southern District of New York. ("FLSA Claim Period").

**B.    Settlement Consideration**

The Agreement provides that Defendants shall pay a total Gross Fund Value ("GFV") of Two Million Five Hundred Thousand Dollars ($2,5000,000.00) which includes attorneys' fees, costs, expenses, and Defendants taxes and withholding payments.  Based on Class Counsel's assessment  of the evidence produced by Defendants, this settlement fund represents approximately 60% of the Settlement Class' "best possible day" assuming, *inter alia*, (1) the Rule 23 class was certified; (2) the collective action remained certified; (3) Class Representative's claim of improper retention of tips was credited; and, (4) Defendants in fact failed to pay overtime.

Class Members will receive an award without having to file a proof of claim or a claim form.  While class members employed after July 1, 2005 will be eligible for a small enhancement by submitting a blue consent to join form, *all* Class Members will received their base award regardless.  Class Counsel shall be paid, subject to Court approval, a contingent fee (and recovery of costs) equal to 33.33% of the GFV, or $833,333.33.  This percentage is in accordance with the Professional Services Agreement entered into between the Class Representative, all opt-in plaintiffs to date and Class Counsel.  The Agreement also provides

7

individual enhancement awards, which shall also be paid out of the GFV, subject to Court approval, to four Settlement Class Member (including to Class Representative) totaling Forty-Thousand Dollars ($40,000.00).  The Agreement further provides that the Defendants' portion of taxes and withholding payments owed as a result of it payment of wages to its current and former employees shall be deducted from the GFV.  The remaining amount (the "NFV") shall be distributed among Class Members that do not opt-out of the litigation ("Settlement Class Members") on a pro-rata basis determined by how many hours each Qualifying Class Member worked for Defendants during the Class Period.  Defendants will withhold relevant taxes from these payments.

The individual settlement amount shall be calculated in the following steps: (1) each employee will be classified by Class Counsel as either a "Waiter," "Runner," "Busser," and "Bartender," according to the last job held while employed at Defendants' restaurants; (2) each Waiter will receive ten points for each hour that the employee recorded in the Defendants' records at any time during the applicable Claim Period; (3) each Runner will receive six points for each hour that the employee recorded in the Defendants' records at any time during the applicable Claim Period; (4) each Busser will receive four points for each hour that the employee recorded in the Defendants' records at any time during the applicable Claim Period; (5) each Bartender will receive six points for each hour that the employee recorded in the Defendants' records at any time during the applicable Claim Period; and (7) each Settlement Class Member who was employed by Defendants during the FLSA Claim Period who submits a valid blue Consent to Join the FLSA claim form within sixty (60) days after Class Counsel mails the Settlement Class Members the forms will have their points during the FLSA Claim Period increased by three percent (3%).  The differences between the multipliers are based on each

position's participation level in Nobu's tip-pools.  For example, runners and bussers typically received fewer tips than waiters.  The point enhancement for those employees submitting a valid Blue Consent to Join Form is consistent with the increased damages available for FLSA claims. *See* 29 U.S.C. § 216(b) (permitting a recovery for liquidated damages).

### C.    Release of Claims

In return for the above consideration, Settlement Class Members will release all "Released Claims" (as defined in the Settlement Agreement) against each and all of the Defendants and all related entities.  In general, Settlement Class Members will release all wage and hour claims under state and federal law.  Settlement Class Members will retain claims unrelated to their wage and hour claims.

## IV.    PRELIMINARY SETTLEMENT APPROVAL

### A.    The Role of the Court

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any compromise of claims brought on a class basis. Approval of a proposed settlement is a matter within the broad discretion of the district court. *See e.g. In re American Bank Note Holographics, Inc.,* 127 F.Supp.2d 418, at 429 (S.D.N.Y. 2001) ("Approval of the Settlement is within the Court's broad discretion."); *In re Michael Milken & Assoc. Sec. Litig.,* 150 F.R.D. 46, 53 (S.D.N.Y. 1997) (the trial court has discretion to approve a class action settlement and should be concerned with whether the settlement, taken as a whole is adequate, fair and reasonable.) (internal citations omitted);  *In re Nasdaq Market-Makers Antitrust Litigation,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("Where the proposed settlement appears to be the product of serious, informed, non-conclusive negotiations, has not obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range

of possible approval, preliminary approval is granted.").

"If the court preliminarily approves the settlement, it must direct the preparation of notice of the certification of the settlement class, the proposed settlement and the date of the final fairness hearing." *Initial Pub. Offering,* 226 F.R.D 186, 191 (S.D.N.Y. 2005). Class members may then present arguments and evidence for and against the terms of the settlement before the Court decides whether the settlement is fair, reasonable and adequate, *ld.* (internal citations omitted).

In addition, because the FLSA's provisions are mandatory, employees' claims for back wages may not be compromised absent either supervision by the Secretary of Labor or approval by the Court. *See* 29 U.S.C. § 216(c).

**B.      The Proposed Settlement Class May be Certified**

Prior to granting preliminary approval of a settlement, district courts determine whether the proposed settlement class is a proper class for settlement purposes. *See e.g., Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997); (Courts examine whether the proposed class would be adequately represented and fairly treated by a class action settlement).

The Court may certify a class where plaintiffs demonstrate that the proposed class and proposed class representatives meet the prerequisites in Rule 23(a) - numerosity, commonality, typicality and adequacy of representation - and one of the three requirements of Rule 23(b).  Fed R. Civ. P. 23; *In re Visa Check/Mastermoney Antitrust Litig.,* 280 F.3d 124, 132-33 (2d Cir 2001).  To establish a class under Rule 23(b)(3), it must be shown that "questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

In certifying a settlement class, the Court is not required to determine whether the action, if tried, would present intractable management problems. *Amchem,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial") (internal citations omitted). Rather, the Court has great discretion in determining whether to certify a class. *See American Bank Note Holographics, lnc.,* 127 F.Supp.2d at 429 ("All aspects of settlement approval ...rest in the sound discretion of the district court.").

### 1. Plaintiffs Have Met All Of The Prerequisites Under Rule 23(a).

Plaintiffs have satisfied the numerosity, commonality, typicality and adequacy of representation requirements under Rule 23(a).

#### a. Numerosity is Satisfied

The Parties estimate that the Class includes at least 600 members. Thus, the Class is so numerous that joinder of all Class members is impracticable. *See Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) (holding that numerosity can be presumed at a level of 40 members).

#### b. Commonality is Satisfied

There are several questions of law and fact common to the Settlement Class. Among these questions are: (1) whether Defendants employed or jointly employed the Class Representatives and the Settlement Class members within the meaning of New York's Labor Laws and the FLSA; (2) whether Defendants paid the Class Representatives and the Settlement Class members the minimum wage for all hours worked; (3) whether Defendants' practices, policies, programs, procedures, protocols and plans allowed for the payment of overtime to the

Class Representatives and the Settlement Class members; (4) whether Defendants' practices, policies, programs, procedures, protocols and plans violated the Class Representatives' and the Settlement Class members' right to collect payment for all hours worked; (5) whether Defendants retained portions of the Class Representatives' and the Settlement Class members' tips; and, (6) whether the Class Representatives and the Settlement Class members were forced to share their tips with parties who were not entitled to tips.

The Class Representatives and Settlement Class members assert that each restaurant in which Settlement Class members worked applied common practices and procedures, therefore, the commonality requirement is easily satisfied. *See Daniels v. City of New York,* 198 F.R.D. 409, 417 (S.D.N.Y. 2001) ("[t]he commonality requirement will be met if the Plaintiffs share a common question of law or fact with the grievances of the prospective class.")

### c.    <u>Typicality is Satisfied</u>

Similarly, the typicality requirement is satisfied here because Plaintiffs' claims arise from the same "course of events" – namely whether Defendants payroll practices complied with federal and state wage laws - as those of absent class members and rely on "similar legal arguments" to prove Defendants' liability. *See Robinson v. Metro North Commuter R.R.,* 267 F.3d 147, 155 (2d Cir. 2001).

### d.    <u>Adequate Representation is Satisfied</u>

Finally, Class Representatives are adequate representatives of the proposed class and have fairly and adequately represented and protected the interests of all Settlement Class Members in achieving this settlement.  The Class Representatives have no known conflicts with any Settlement Class members, and retained Class Counsel who are qualified and experienced in class action and employment litigation.

Moreover, the Settlement Class members are represented by one of the premiere wage and hour litigation firms in the nation.  Class Counsel conducted a thorough pre-filing and continuing investigation, vigorously prosecuted the lawsuit, and negotiated a settlement that provides prompt and valuable relief to Class Members.  *See Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.,* 222 F.3d 52, 60 (2d Cir. 2000) (class counsel will be deemed adequate if it has no conflicts to any class member and if they are qualified, experienced and able to conduct the litigation).

### 2.    The Court Should Certify The Settlement Class Under Rule 23(b)(3)

Certification is appropriate because, as set forth above, the predominance and superiority requirements of Rule 23(b)(3) are satisfied.  Specifically, the questions of law and fact common to all Settlement Class Members are described above. These common questions predominate over any individual issues such as the nature and extent of damages. *See In re Visa Check/Mastermoney Antitrust Litig.,* 280 F.3d at 139 ("Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues.")

Additionally, a class action is superior to other available methods for the fair and efficient adjudication of the controversy because joinder of all Settlement Class Members is impossible. Moreover, as the damages suffered by individual members of the Settlement Class are relatively small as compared to the expense and burden of individual litigation, it would be exceedingly difficult for all Settlement Class members to individually redress the harm done to them. *Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81, at 89 (S.D.N.Y. 2001) ("[t]he interest of the class as a whole to litigate the predominant common questions substantially outweighs any interest by individual members to bring and prosecute separate actions.").

In sum, the Settlement Class is suitable for certification, and the Court should certify the Settlement Class pursuant to Rule 23(b)(3), for purposes of granting preliminary approval to the settlement.

### 3.       The Court Should Appoint Plaintiffs' Counsel As Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel ... [who] must fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(A), (B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(C).

D. Maimon Kirschenbaum and Charles Joseph of Joseph & Herzfeld LLP, and Cletus Lyman of Lyman & Ash, and Jeffrey E. Goldman of the Law Offices of Jeffrey E. Goldman, and their respective firms have served and currently serve as lead counsel on many local and national class and collective actions under the FLSA and state wage and hour laws.  Specifically, Mr. Kirschenbaum has extensive experience serving as lead counsel in a number of local class and collective actions representing aggrieved employees in the restaurant industry.  Collectively, Class Counsel have recovered significant monetary awards for thousands of New York City restaurant employees.  Class Counsel spent significant time investigating the Class' claims, and committed themselves to the expenditure of significant resources that were necessary to achieve a favorable result for the Class.  Therefore, the Court should appoint the undersigned to serve as Class Counsel for the Settlement Class pursuant to Rule 23(g).

### C.       Criteria To Be Considered In Deciding Preliminary Approval

After certifying the Settlement Class, the Court determines whether to preliminarily

approve the settlement by making "a preliminary determination of the fairness, reasonableness, and adequacy of the settlement terms." *Manual for Complex Litigation, Fourth,* § 21.633. The primary question raised by a request for preliminary approval is whether the proposed settlement is "within the range of reasonableness." *Id.* § 40.42.

"In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice." *Nasdaq Market-Makers Antitrust Litigation,* 176 F.R.D. at 102. The purpose of the preliminary approval inquiry is "to determine whether the proposed settlement is within the range of possible approval." *In re Prudential Sec. lnc.* 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (the role of the court is to determine whether the proposed basis for settlement is adequate, reasonable and fair and justifies providing notice of the settlement to the proposed class).

It is the fairness hearing that affords class members "an opportunity to present their views of the proposed settlement." *Initial Public Offering,* 226 F.R.D. at 191. Accordingly, a district court reserves its ultimate determination of whether a proposed settlement is fair, reasonable, and adequate for the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement. *Prudential,* 163 F.R.D. at 210 (noting that the court can better evaluate the fairness of the settlement "at the fairness hearing, where it can consider the submissions by proponents and potential opponents of the settlement and the reaction of the Class Members.")

"It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions." *In re Prudential,* 163 F.R.D. at 209; *Wal-Mart Stores, lnc. v. Visa U.S.A. lnc.,* 396 F.3d 96, 117 (2d Cir. 2005) ("The compromise of

complex litigation is encouraged by the courts and favored by public policy"); *In re Luxottica Group S.P.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) ("Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation."). "[S]ince the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation, the court must not turn the settlement hearing into a trial or a rehearsal of the trial; and that the court is concerned with the likelihood of success or failure and ought, therefore, to avoid any actual determination on the merits." *Saylor v. Lindley,* 456 F.2d 896, 904 (2d Cir. 1972) (internal citations omitted). Moreover, the opinion of experienced counsel supporting the settlement is entitled to considerable weight. *See e.g., In re Global Crossing Securities and ERISA Litigation,* 225 F.R.D. 436, 461 (S.D.N.Y. 2004) ("In addition to this presumption of fairness, great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.") (internal citations omitted); *In re American Bank Note Holographics, Inc.,* 127 F.Supp.2d at 430 ("As with other aspects of settlement, the opinion of experienced and informed counsel is entitled to considerable weight.").

Here, experienced counsel, after substantial adversarial litigation and negotiation, and after a lengthy mediation before an experience wage and hour mediator, have concluded that the proposed settlement - which includes, among other things, substantial monetary benefits to the class members - is in the best interest of the Class as a whole. As explained above, each Qualifying Class Member will receive a significant prorated sum per workweek that she worked for Defendants. The settlement merits preliminary approval and submission to the Settlement Class for its consideration.

1.    **There Are No Grounds to Doubt The Fairness Of The Settlement,**

**Which Is The Product of Extensive, Arm's Length Negotiations**

The criteria for evaluating a request for preliminary approval have been summarized as follows:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Prudential,* 163 F.R.D. at 209 (quotation omitted). Under this criteria, the Court should grant preliminary approval of the proposed settlement and order the dissemination of notice.

Moreover, where a settlement is the by product of a mediation, there is a presumption of fairness and arms-length negotiations. *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *7 (S.D.N.Y. 2006) (there is a presumption of fairness when the parties submit to mediation and conclude that settlement is the most efficient outcome of the litigation for their clients).

The first consideration in the preliminary-approval analysis is whether "the settlement is the result of serious, informed and non-collusive negotiations." *In re Medical X-Ray Film Antitrust Litig.,* 1997 U.S. Dist. LEXIS 21936, at *19 (E.D.N.Y. Dec. 10, 1997). In applying this factor, courts give substantial weight to the experience of the attorneys who prosecute the case and negotiated the settlement at arms-length, *Initial Public Offering Sec. Litig.;* 243 F.R.D. 79, at 83 (S.D.N.Y. 2007) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal citations omitted).

The proposed settlement here is the product of extensive negotiations conducted in-person and telephonic sessions, and as discussed above, a mediation before an experienced

Mediator. Based on their familiarity with the factual and legal issues, and with the assistance of the Mediator, the Parties were able to negotiate a fair settlement, taking into account the costs and risks of continued litigation. The negotiations were at all times hard-fought and, at all times, at arms' length, and have produced a result that the Class Representative and Class Counsel believe to be in the best interests of the Class.

## 2.    The Settlement Contains No Obvious Deficiencies

The proposed settlement has no obvious deficiencies. The settlement provides only modest enhancement awards for certain Plaintiffs in this lawsuit that were instrumental in facilitating a resolution of this matter in a *total* amount not to exceed $40,000.  These awards are reasonable in light of the overall benefit conferred on the Settlement Class. *See, e.g., Sheppard v. Consolidated Edison Co. of New York, Inc.,* No. 94-CV-0403, 2002 WL 2003206, at *6-7 (E.D.N.Y. Aug. 1, 2002) (approving aggregate incentive payment of $119,167 for six named plaintiffs in a race discrimination class action).

Finally, the settlement does not mandate excessive compensation for Class Counsel. Class Counsel will apply for an award of attorneys' fees and reimbursement of expenses, equal to 33 1/3% of the GFV.  This percentage is "within the range of reasonable attorney fees awarded in the Second Circuit."  *See Klein ex rel. Ira v. PDG Remediation, Inc.*, 1999 WL 38179 (S.D.N.Y. 1999); *See also, Strougo ex rel. Brazilian Equity Fund, Inc.,* 258 F.Supp.2d at 262 (33 1/3% of settlement fund approved for attorneys' fees); *In re Blech Sec. Litig.,* No. 94 Civ. 7696, 2002 WL 31720381, at *1 (S.D.N.Y. Dec. 4, 2002) (33 1/3% of settlement fund approved for attorneys' fees, plus costs); *Adair v. Bristol Technology Sys.*, No. 97 Civ. 5874, 1999 WL 1037878, at *4 (S.D.N.Y.  Nov. 16, 1999) (33% of settlement fund approved for attorneys' fees, plus costs); *Cohen v. Apache Corp.,* No. 89 Civ. 0076, 1993 WL 126560, at *1

(S.D.N.Y. Apr. 21, 1993) (33 1 /3% of settlement fund approved for attorneys' fees); *In re Gulf Oil/Cities Service Tender Offer Litigation*, 142 F.R.D. 588, 596-597 (S.D.N.Y. 1992) (33 1/3% of settlement fund approved for attorneys' fees); *In re Avon Prods. In., Sec. Litig.,* No. 89 Civ. 6216, 1992 WL 349768, at *3 (S.D.N.Y. Nov. 6, 1992) ("The request for 30% is in line with numerous awards in this Court and elsewhere in recent litigation."); *In re Crazy Eddie,* 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (33.8% of settlement fund approved for attorney's fees, plus costs).

Further, this is the percentage agreed to by Class Representative and all those plaintiffs who have opted-in to date.

### 3.    The Settlement Falls Within The Range Of Possible Approval

As explained above, the proposed Settlement was reached only after protracted arms' length negotiations and ultimately a mediation between the Parties and their counsel who considered the advantages and disadvantages of continued litigation.  Class Counsel believe that this settlement achieves all of the objectives of the litigation, namely a monetary settlement to the employees of Defendants for Defendants' alleged failure to pay them minimum wages and/or overtime wages and for Defendants' alleged illegal retention of tips and gratuities.  Class Counsel, with a great deal of experience in the prosecution and resolution of class actions and collective action litigation, have carefully evaluated the merits of this case and the proposed settlement. Even if the matter were to proceed to trial, Class Counsel acknowledges that the apparent strength of Plaintiffs' claims is no guarantee against a complete or partial defense verdict. Furthermore, even if a judgment were obtained against Defendants at trial, the relief might be no greater, and indeed might be less, than that provided by the proposed Settlement.

In light of the above considerations, the proposed settlement as a whole falls within the

range of possible final approval. The Court should therefore grant preliminary approval of the settlement and direct that notice of it be given to the Settlement Class.

## V.    THE PROPOSED PLAN OF CLASS NOTICE

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P.23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 175-76 (1974)  ("each class member who can be identified through reasonable effort must be notified that he may request exclusion from the action and thereby preserve his opportunity to press his claim separately or that he may remain in the class and perhaps participate in the management of the action.")

Rule 23(e)(B) similarly states, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."  Fed. R. Civ. P. 23(e)(B). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."  *Wal-Mart Stores,* 396 F.3d at 113 (internal citations omitted). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Id.* At 114 (internal citations omitted).  Notice is "adequate if it may be understood by the average class member."  4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11:53, at 167 (4th ed. 2002).

Here, Class Counsel shall mail the Class Notice Forms (Exhibit C) to all Settlement Class Members, at the last known addresses as maintained by Defendants.  Class Counsel shall

mail these Notices via first class mail.  For each Class Notice returned to Class Counsel as undeliverable, Class Counsel will attempt a skip trace using the computer databases available on Westlaw and the information provided by Defendants.  Those individuals who are located using the skip trace will be sent an additional copy of the Class Notice.

The proposed methods of notice comport with Rule 23 and the requirements of due process. As for the content of the notice, Rule 23(c)(2)(B) says:

> The notice [to a rule 23(b)(3) class] must concisely and clearly state in plain, easily understood language:
>
> - the nature of the action,
>
> - the definition of the class certified,
>
> - the class claims, issues, or defenses,
>
> - that a class member may enter an appearance through counsel if the member so desires,
>
> - that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and
>
> - the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  Where notice is being sent in connection with a proposed settlement, "the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  *Wal-Mart,* 396 F.3d at 114 (internal citations omitted).

The proposed Class Notice comports with the above-cited legal authorities in all respects. To that end, the proposed Class Notice: (1) describes the nature, history, and status of the litigation; (2) sets forth a clear definition of the proposed Settlement Class; (3) states the class claims and issues; (4) clearly provides that Settlement Class Members may enter an

appearance through their own counsel; (5) discloses the right of the people who fall within the definition of the Settlement Class to exclude themselves from the Settlement, and specifies the deadline and procedure for doing so; (6) warns of the binding effects of the settlement approval proceedings on those persons who remain in the Settlement Class; and (7) advises the Class members of how their recovery will be calculated.   In addition, the Class Notice clearly describes the terms of settlement, and the relief available to Settlement Class Members.

The proposed Class Notice also provides clear notice that the Parties have agreed upon compensation for Class Counsel, in the form of attorneys' fees or reimbursable litigation expenses, and advises Settlement Class Members of the Parties' agreement that the award of attorneys' fees and reimbursable expenses to Class Counsel will affect the benefits available to Settlement Class Members.

Finally, the Class Notice also provides contact information for Class Counsel; summarizes the reasons the parties are proposing the settlement; discloses the date, time and place of the formal Fairness Hearing; and describes the procedures for objecting on the settlement and appearing at the Fairness Hearing.

The Class Notice contents therefore satisfy all applicable requirements. Therefore, in granting preliminary settlement approval, the Court should also approve the parties' proposed form and method of giving notice to the Settlement Class.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully ask that the Court grant

preliminary approval of the proposed settlement and enter the proposed Preliminary Order in

connection with Settlement Proceedings, submitted herewith.

Date:   New York, New York
        August 7, 2008

<u>/s/D. Maimon Kirschenbaum</u>

D. Maimon Kirschenbaum (DK-2338)
Charles E. Joseph (CJ-9442)
JOSEPH & HERZFELD LLP
757 Third Avenue, 25th Floor
New York, NY 10017
Tel: (212) 688-5640
Fax: (212) 688-2548

*Attorneys for Settlement Class*