United States District Court
Southern District of New York
_____

ALISA AGOFONOVA and AARON POU on behalf of themselves and all others similarly situated,

    Plaintiff,

  v.

NOBU CORP., NOBU ASSOCIATES, L.P., NOBU NEXT DOOR, LLC, NOBU 57 LLC, DREW NIEPORENT, and RICHARD NOTAR,

    Defendants.
_____

Index No: 07 CIV 6926 (DAB)

**JUDGE: HON. DEBORAH A. BATTS**

## DECLARATION OF MAIMON KIRSCHENBAUM

I, Maimon Kirschenbaum, under penalty of perjury, affirm as follows:

1. My name is Maimon Kirschenbaum, and I am a member of Joseph & Herzfeld LLP, Plaintiffs' counsel in the above-captioned matter.

2. Prior to resolving this case in May of 2008, both Parties engaged in active and progressive settlement negotiations and discovery.

3. Throughout the course of this litigation, my firm made dozens of calls to Plaintiffs regarding the facts underlying the case and responded to numerous calls regarding the case. By the time of settlement, Class Counsel represented 48 current and former of Defendants' employees. The employees had my cell phone number for after-hours access, and I made myself available around the clock and on weekends to accommodate the Plaintiffs' work schedules. The employees used this resource frequently. Through this constant contact, we kept the Class Members informed and involved in the action.

4. After Defendants appeared in the Wage Action, the Parties met and conferred over both the legal issues and the factual bases underlying the Class Representative's claims.

5. Plaintiffs served their First Request for Production of Documents on Defendants on December 4, 2007. On December 5, 2007, Plaintiffs served their First Set of Interrogatories Propounded to Defendants. Defendants served their First Request for the Production of Documents was served on January 23, 2008.

6. As part of the discovery process, Defendants produced personnel files of the named plaintiffs and randomly chosen putative Settlement Class members, wage and payroll records, including but not limited to, daily time sheets, ADP reports, daily and weekly payroll worksheets, tip-sheets, and electronic time cards. Defendants also produced documents describing each position at their restaurant including, for example, classified advertisements placed in newspapers and on the internet. The Parties agreed that these abundant documents were relevant to the claims asserted by the Class Representatives and that the production of these documents facilitated meaningful and productive settlement discussions, including mediation. Defendants' Counsel also provided information obtained from conversations with corporate representatives. My firm reviewed and analyzed all documents and information obtained from Defendants.

7. Plaintiffs' Counsel obtained documents from plaintiffs and class members and met extensively with several plaintiffs and class members to review Defendants production and to attain a complete understanding of the case.

8. The Parties agreed to hold a voluntary mediation ("Mediation") before Ms. Bonnie Siber Weinstock (the "Mediator"), an experienced wage and hour mediator, in an attempt to resolve the issues pending before the Court in this Wage Action.

9. Prior to the Mediation, the Parties each submitted a confidential Position Statement to the Mediator. The Plaintiffs' position statement contained their legal and factual arguments and cited both legal support and specific Nobu documents in support of their assertions. The factual bases of the Parties' Position Statements were based upon, in-part, the documents produced by Defendants prior to the Mediation. Plaintiffs' Position Statement also included spreadsheets containing their calculations of damages in

this Wage Action.  Inclusive of exhibits, Plaintiff's Position Statement was 138 pages long.  Plaintiffs' provided Defendants a copy of their Position Statement.  Defendants also submitted and shared with Plaintiffs' a lengthy position statement outlining their position and various defenses.

10. The Mediation was held on May 13, 2008, at the offices of Defendants' Counsel and present at the Mediation were the Class Representatives, several Settlement Class members, Defendants, Defendants' Counsel and Class Counsel.  The Mediation lasted over 12 hours.

11. Through the efforts of the Mediator, the Parties reached a preliminary agreement to settle the Wage Action.  However, this agreement almost fell apart in July 2008.  Defendant's Counsel argued that sushi chefs should receive a portion of the settlement amounts.   As some sushi chefs performed little to almost no customer services, Plaintiffs were unwilling to include sushi chefs in settlement class on principle.  Plaintiffs also had a concern that the inclusion of sushi chefs in the class would diminish the recovery of the settlement class members.  After Plaintiffs' Counsel made clear that that the exclusion of sushi chefs was essential to the Settlement and that Plaintiffs were prepared to back out of the settlement,   Defendants' counsel agreed to a settlement in which the sushi chefs were not members of the class.

12. Subsequently, the Parties had another dispute regarding the timing of payments due under the agreement.  Again, the Parties engaged in hard-fought negotiations regarding the timing of payment, and the assistance of the mediator was necessary to restore the settlement.

13. The parties worked together to craft the settlement agreement.

14. We sent out the Notice of Settlement to all Class Members in late October of 2008.  Five Hundred and Three (503) notices were sent.

15. Pursuant to this Court's Order dated January 14, 2009 we sent out a second mailing for all Class Members that did not receive the original mailing because of a change of address.

16. Additionally, pursuant to this Court's October 1, 2008 Order, we mailed to each Class Member notice of the adjournment of the Fairness Hearing until February 6, 2009.

17. No member of the class objected to the Settlement, and only two members have opted-out. One individual provided no reason for opting out. The other individual who opted out simply stated that he only worked at Nobu as a trainee and never had a full-time position.

18. As of January 29, 2009, One Hundred and Ninety Seven (197) individuals filed notices to receive their extra FLSA portions of the Settlement.

19. Joseph & Herzfeld LLP is a law firm dealing almost exclusively with employee rights. Specifically, the firm represents employees in wage/hour and employment discrimination matters.

20. The firm was founded by Charles Joseph.

21. Mr. Joseph graduated New York University School of Law and has over fifteen years of experience practicing law.

22. After seven years at Debevoise & Plimpton LLP, in 1999 he founded Joseph & Herzfeld LLP in order to dedicate his practice to the protection of workers' rights.

23. Mr. Joseph spends approximately fifty percent of his time litigating wage and hour issues, and serves as lead counsel for several large FLSA class/collective actions.

24. I manage the firm's food service wage and hour department.

25. Since graduating Fordham University School of Law in 2005, I have worked at Joseph & Herzfeld LLP. As a result of my accomplishments representing

foodservice workers throughout New York City, detailed below, I became a member/partner of the firm in May of 2007.

26. Over 90% of my personal current docket involves class action lawsuits against New York City restaurants for wage and hour violations.

27. During the last approximately two and a half years, our wage and hour practice filed 37 class/collective actions on behalf of people employed in the New York food service industry, in addition to a significant number of individual actions.

28. In litigating these cases, I have spent the majority of the last two years researching and discussing with experts all cases, legislative history, administrative decisions, related to New York's laws related to compensation of tipped employees.

29. Six of these actions have been approved as collective actions under the FLSA, 29 U.S.C. § 216(b) with Charles Joseph and me as lead counsel, and Charles and I have been approved four times as lead or co-lead counsel pursuant to Rule 23.

30. Several of these of the cases have already settled for a total recovery of nearly $10,000,000.  (Some are pending preliminary or final approval by the Court.)

31. As a result of these lawsuits, we have recovered significant sums of money for thousands of New York City restaurant employees.   In addition, we have increased awareness of wage and hour laws throughout the New York City restaurant industry.

32. Our work has attracted significant media attention and contributed greatly to a city-wide movement on behalf of food service employees.

33. Jeffrey Goldman is an attorney at the Law Offices of Jeffrey E. Goldman.

34. Mr. Goldman graduated from Law School at Temple University in Philadelphia in 1992.  He has been practicing been practicing employment law for approximately sixteen years.

35. Mr. Goldman served as Co-Chair of the Philadelphia Chapter of the National Employment Lawyer's Association, and has spoken at various conventions and engagements focusing on employment-law.

36. Mr. Goldman worked in the restaurant class action arena since 2002 litigating or arbitrating many cases. Mr. Goldman was lead counsel or co-lead counsel on lawsuits against several prominent restaurant chains, including, Del Friscos, Jean-Georges and Morton's.

37. Michael Palmer has been with Joseph & Herzfeld since receiving his JD from NYU Law in 2004.

38. Mr. Palmer's legal experience relates almost exclusively to employment law. He represents clients in both individual and class action cases.

39. Mr. Palmer has extensive experience in FLSA matters and currently represents individuals and classes throughout the country.

40. Brian Fredericks joined Joseph & Herzfeld as an associate after receiving his JD from Boston University School of Law in 2006.

41. Mr. Fredericks represents clients in both individual and class action employment-related cases.

42. Based on our extensive experience in precisely this type of litigation and our thorough familiarity with the factual and legal issues in this case, we have reached the firm conclusion that the proposed Settlement is clearly in the best interests of the named Plaintiffs and the putative class.

43. My firm spent significant attorney and paralegal time litigating this case.

44. Below is a chart summarizing the specific attorneys, their hourly rates, and their total time worked on this matter, in addition to the total paralegal time spent on this matter.

| Attorney | Rate | Total Time | Total |
|---|---|---|---|
| Charles Joseph | $600 | 14.5 | $8,700 |
| Jeffrey Goldman | $600 | 54.3 | $32,580 |
| D. Maimon Kirschenbaum | $425 | 167.2 | $71,060 |
| Michael Palmer | $350 | 105.4 | $36,890 |
| Brian Fredericks | $250 | 14.1 | $3,525 |
| Paralegal Time | $125 | 315 | $39,375 |
|  |  | **Total:** | $192,130 |

45.     Based on past experience, I believe it is likely that my firm will spend an additional amount of time equal to more than $10,000 in legal fees, dealing with settlement-related issues, such as discussing with Class Members the details of their individual awards, tax related issues, address changes, etc.

46.     Attached hereto as Exhibit A is a true and accurate copy of the Joint Stipulation of Settlement and Release, dated August 6, 2008.

47.     Attached hereto as Exhibit B are true and accurate copies of the NYDOL Opinion Letter of Sept. 16, 1998; a selection from the DOL Field Operations Handbook; and DOL Wage and Hour Opinion Letter of Dec. 19, 2008, FLSA2008-18.

48.     Attached hereto as Exhibit C is a true and accurate copy of the notice to class members.


Dated: New York, New York
       January 30, 2009

                                            /s/ D. Maimon Kirschenbaum_____